Good afternoon. We'll call our first case United States v. Arsenio Arzola and United States v. Misael Arzola. I represent the government in this case. Would you like me to speak after Mr. Carletta speaks on behalf of Arsenio Arzola? Is there a way you would prefer to do it? My preference would be to speak after each defense counsel. All right, that's fine. We'll have an argument as to each separately. May it please the Court, good afternoon. Kevin Carlucci, Assistant Federal Public Defender on behalf of Arsenio Arzola. The issue before the Court today is the sufficiency of evidence on Count 4 of the indictment as to Arsenio Arzola's possession of a firearm in furtherance of a drug conspiracy. And I think it's important to note at the outset that the indictment in this case, Count 4 of the indictment charges that on or about June 30, 2005, Mr. Arzola possessed a handgun, a specific handgun, in connection with the drug offense. It's a little confusing as to exactly which handgun is being talked about where. Is this a handgun different from the one located on Fairmount Street? Yes and no. And by way of background, there was a government witness, Nelson Reyes, who was a government cooperator and a co-conspirator. He testified that the handgun at issue on the day of June 30, found at the house which the firearm had been fired, he had seen before and he had seen it at Apartment 312, 429 Fairmount Street in Jersey City. He had seen the gun there in the past and testified and it seemed that there was not a specific date tied to the gun, but in the past when I first met Arsenio Arzola, he had that particular gun at that location while dealing drugs, kept it in plain view for everyone to see while he was dealing drugs. But then Mr. Reyes goes on to testify specifically on the night before June 30, Mr. Arzola came down from Apartment 312 to Apartment 202, asked Mr. Reyes, said to Mr. Reyes, I'm going home now, can you hold my gun until tomorrow? Gave Mr. Reyes a gun. Which gun Mr. Reyes was arrested with on June 30? So there are two guns. The government doesn't seem to argue that the one in the house was the same one at the stash house. And so I'm going to assume that that's correct. Well, I think the government argues that prior to June 30, the gun found at Mr. Arzola's house was at the stash house. But certainly the testimony is that there was a different gun at the stash house known as the office where Mr. Arzola allegedly conducted business. That was a different gun that was left at the stash house. There's no mention of whether this .380 semi-automatic handgun found at his house on Brinkerhoff Street. There's no mention whether that gun was at the drug dealing location the night before. The gun found at the house was found in a bedroom. There was no drugs at all in the house. There was, however, $5,000? Approximately $5,000 in cash. In a bank envelope? It was not in a bank envelope. I believe that's Mr. Arzola. You can see that the gun at issue here, the gun he used on June 30, was his. And your argument is that that gun was at the house to protect himself and his family. Yes. How can, given the permissible inferences here and the way we must view the evidence, how can it be argued that he was using the gun to protect the family when he's looking out the window at X number of law enforcement entering with police and DEA, et cetera, emblazoned on their bodies? And keep in mind the high bar you have to climb as well. Yes, Your Honor. Well, I think we need to talk about what the government's theory of the case as opposed to the actual evidence presented. The evidence was that the police came to his house to effect an arrest, broke down the front door, he fired two shots. There was testimony that an agent said he saw Mr. Arzola look out the window. But we don't establish that Mr. Arzola... Well, we have to accept that as, we have to look at that in light of most favorable government. He was looking out the window at these people entering his house that said police. It was for a brief second, and what was not established was that he saw the police. The police were, other evidence presented was the police were crouched down around a corner. There were police at the front door, which the front door was not viewable from the window he looked out. We don't know for sure what he saw, is what you're saying? Exactly. We don't know what he saw. But don't we have to infer he saw them, given the verdict? Well, given the verdict, there was another, two other counts of the indictment where the jury did not reach a verdict, using the gun to assault law enforcement and using the gun in furtherance of that violent crime of assaulting law enforcement. The jury did not reach a verdict. And I understand the government's argument that inconsistent verdicts are fine, but on the other hand, the jury, clearly if they thought he was trying to prevent his arrest, there would have been a guilty verdict on the assault on federal agents, there would have been a guilty verdict. What's your view as to what has to be shown from an evidentiary standpoint to support the possession in furtherance of? The law is clear that we need something that furthers it. And in each, in every case we look at, and the Third Circuit has dealt with this issue numerous times, as well as other circuits around the country, there's always something more than a gun and other drug activity. There's always something more than a gun and money. In almost every case where a gun is found in a location and it's tied to drugs, there's drugs at the location, there's paraphernalia at the location, there's actual drug dealing going on where the offense, where the gun is found. I was surprised you didn't cite the Rios case out of the Ninth Circuit, which factually is very much like your case. Are you familiar with that case? I am not, Your Honor. There was a shotgun found in the residence, and there was $2,000 on the person, but they found in the Ninth Circuit that it wasn't sufficient, that the gun with money wasn't enough, which is really what the case is. I think perhaps, Your Honor, I think we're all in the habit of not citing the Ninth Circuit too often. Although it's very beneficial to you in this. But along that line, and the obvious reason there is when drugs are found, drugs are illegal per se. Money is not illegal per se. Well, let's say he had a stack of money found in the area of the loaded gun, and there is no evidence in the case that he had any legitimate means of employment. And, indeed, the only inference is that the only money he made was from drugs. Correct? Well, there was no evidence that he didn't have any other sources of income as well. But you have a verdict. Yes. And you do not wisely even argue that there was insufficient evidence of a drug conspiracy. I don't. In fact, Your Honor, the case was tried, and Mr. Arzola's position was that he was, in fact, involved in drug dealing. He disputed the quantity involved and the conspiracy itself, but did not dispute he was involved in drug dealing. And it can well be argued, you may not accept the argument, that the reason for stash houses is that drugs need not be in a defendant's residence so they could insulate themselves. There were also, or is it missale, two guns found in the basement. That's correct. Of the house, wrapped in plastic in a garbage bag. Yes. Now, again, doesn't this undercut any theory that, at least generically speaking, guns were used for the safety of himself or his family? There were other guns in the house. There was, Mr. Arzola was the only person in the house to possess the gun, to protect the family. There were small children in the house. I think wisely the other guns were wrapped up and put away. But there was a gun for protection for himself and his family, and the evidence, other evidence in the case, shows that he did his drug dealing elsewhere with a different gun, which brings me back to where I started, which is the indictment here charges on June 30th. We're talking about what happened in the house that day, and I think the evidence is clear that, or at least if the government's proofs are accepted as they are on appeal and viewed in their most favorable light, get a different gun the day before at the stash house stealing drugs. And I submit there just is not a connection, but a logical reasonable inference that can be made that he's protecting drug money or he's preventing his arrest. We're talking, I think, more in the line of assumptions. He's a drug dealer, and this is the, I'm sorry. Well, you did have a stash of money, a stack of money found next to the loaded gun. Where did the money come from except from drugs? Is there any evidence that it came from anywhere, anything but drug transactions? There is no testimony either way. There's no evidence tying the money to drugs other than making the inference and then making the further inference that he was protecting the money. All reasonable inferences have to be looked at in the light most favorable to the government on a jury verdict, and you quite candidly concede that in the opening section of your argument in this brief, in the brief, right? Yes. It's a reasonable inference. I think it takes a step too far when there's no evidence tying the money specifically to drugs. We're speculating, and we're speculating more than once. We're speculating, number one, it's drug money. Then we're speculating he's protecting that drug money. Well, this isn't a situation where it's an enhancement at sentencing that the judge can find by preponderance. You've got a beyond a reasonable doubt standard here to be convicted of this crime. The crime is the possession and furtherance. Correct. So, I mean, that's to your benefit. Baseball season's over. I can still throw it over the plate. If there are no further questions. All right. We'll hear from you on rebuttal. Good afternoon. First, I'd like to introduce my colleagues in the court. This is Dennis Carlotta and David Maligold. They were the trial prosecutors in this case. And I just want to make sure that the court received a copy of my letter that I sent out last week stating that I'd like to refer to the case of United States v. Williams. That was your opinion, Judge Randell. Brilliant opinion. Factually distinguishable. You're going to earn your salary today, Mr. Chairman. Factually distinguishable, Your Honor, but I think that logically applicable. Let me pick up where we kind of left off here, and that is the concept that the crime here is possession in furtherance. So there needs to be beyond a reasonable doubt that there was possession in furtherance of criminal activity. The drug conspiracy. The House report noted that there must be clear showing that the drug is possessed to advance or promote the commission of the underlying offense, i.e., drug conspiracy. How is that satisfied here? Your Honor. It's not an in relation to, it's not just connected with. Your Honor, it is in relation to. There are three ways that 924C can be violated, and all three of them were charged in this case. We can convict him of possession in furtherance or during and in relation to. We can convict him of. That's use during and in relation to. You can convict of if there's possession in furtherance. I'm sorry. Yes, possession in furtherance, and that's what he was convicted of. Your Honor, he was convicted of the count of the indictment, and he was charged, and the jury was instructed on all three theories. Okay.  As Mr. Carlucci said in his opening statement, there was no dispute that Mr. Arzola fired the gun at the police officers. That's clearly use. But it's during and in relation. It's during and in relation, that's right. And, Your Honor, that's where your opinion in United States v. Williams I think is significant because you point out in that opinion that during and in relation to is a much looser nexus than possession in furtherance of. But the arguments in the briefs had to do with possession in furtherance of. Well, those were, and I apologize for not citing your opinion. Read the briefs and go by what is being argued there. Yes, but, Your Honor, we can, look, I think the evidence was sufficient to show possession in furtherance, and I'll get to that in a minute. But we also are entitled to have this conviction affirmed if the evidence was sufficient to prove use during and in relation to. Now, there's no dispute that it was during the drug trafficking conspiracy because the indictment charged that the conspiracy ended on the day of the arrest, which was June 30th. And in relation to, as you say, in the Williams case, merely requires that the gun have the potential to be related or have some connection to the drug trafficking conspiracy. Now, there just can't be any doubt about that on this record, Your Honor. Mr. Arzola was using the same gun. According to Nelson Reyes, and his testimony has to be accepted as true on a sufficiency review, Nelson Reyes says the same gun that was recovered on the day of the arrest, the gun that Mr. Arzola used to shoot at the police officers, was Mr. Arzola. Where does your brief contend that that's the case? Your Honor, the brief talks about it doesn't. It doesn't make that point. It does not make the point that that was the case. Well, that's a pretty big point, isn't it? It is a big point. And I'm assuming that you're conceding that it isn't the same gun. I mean, that's a huge point. Well, Your Honor, it is the same gun. And let me point out where in the record. 2160 to 63, maybe. I've got Reyes's testimony, but you don't rely on it in your brief at all. You're right, Your Honor. So I'm assuming there's something that takes that. But, Your Honor, even if it was a different gun, what we still have is Mr. Arzola using a gun, whether it's the same gun or a different gun, using a gun clearly in furtherance of drug trafficking because he's got it on the table while he's dealing drugs to Mr. Reyes. So clearly you've established that Mr. Arzola has the practice. Did the indictment charge the use of this particular gun on June 30th? A particular gun or just a gun? The indictment charges that he used this particular gun on or about June 30th. So if he used a different gun. He possessed a different gun the day before he was arrested. At some point in the summer of 2005, Mr. Arzola used this gun, possessed this gun while he was selling drugs to Mr. Reyes. But you're using use during and in relation to the enhancement, or is that the crime? That is the crime. As well as possess in furtherance of. That's right. But your brief is limited to possess in furtherance of, correct? Yes, it is. All right. Now, use in relation to, you're saying the firing the gun? That is use. That is the use. That is the use during. If he didn't have the firing of the gun, then the possession in furtherance of would be strictly limited to? In furtherance. The bedroom. That's right. And, Your Honor, let's just look at the argument that was advanced in the brief there. The evidence was clearly sufficient to establish under the Sparrow factors, which were adopted by this Court in several cases, the Iglesias case, the Robb case. It's a balancing. There are a number of factors. That's right. And virtually every one of them is satisfied in this case. You have an illegal gun. Yeah, the gun is illegal as tarsanic. And that's possession in furtherance. So one question is, what kind of crime was this possession in furtherance of? It's in furtherance of drug trafficking. And Mr. Arzola is not an occasional drug trafficker. He is dealing drugs virtually seven days a week. But they're not at the house, right? They're not dealt at the house. And there's no allegation of any drug activity at the house. There's no allegation of any activity at the house. But you don't need to have the gun in the house with the gun in order to prove possession in furtherance. Most of the cases do, though, factually. But it's not required. And so if you look at the Sparrow factors, you see that Mr. Arzola is a prolific drug trafficker. They ask about what are the consequences or what are the attendant circumstances of the possession. He possesses the gun right in his bedroom. He's got it so handy that he's able to get to it and fire at the police officers before they even get into the house. But if there's no drug activity going on at the house, the accessibility of the gun really doesn't mean that. He's protecting drug proceeds, Your Honor. I mean, that is in furtherance of a drug trafficking conspiracy. If you've got $5,000 in cash in your house and you're somebody who's dealing drugs in the quantity of the evidence. Is there evidence specifically linking that money to drug proceeds? You know, is it a drug proceed? Is there anything in the record? There is certainly sufficient evidence that the jury could infer that it's drug proceeds because of the volume of drug trafficking that's going on, the lack of evidence that he's doing anything other than drug trafficking, the fact that it's a substantial amount of cash that's being kept in the house rather than where most people would keep $5,000 if it was legitimate money. Because one thing, if you have drugs in the house and you have the gun, you can say that it was in furtherance of the commission because the drugs are there and could be sold. When you have money there and the gun and absolutely no drugs, no evidence of drugs being sold at the house, do you have sufficient evidence to say beyond a reasonable doubt that the gun was being possessed in order to promote the commission of the underlying drug offense? You do, Your Honor. And, in fact, there's a case that's cited in the brief from this court, another Williams opinion, in which there was no evidence that the defendants were in possession of drugs at the time they used the gun. What's the case? That is the 2006 Williams case. Did you cite that to us? Yes, it was cited and discussed. It's the case where the defendant used the gun in order to retaliate against people who had kidnapped members of his family. Well, that was the defense in this case, Your Honor. The defense in this case was I need a gun to protect my family because people may be breaking in to rob me. Well, if they opened fire in connection with kidnappers, in connection with the whole drug conspiracy, I mean, that was a little bit more than just something in a nightstand. I'm sorry, I didn't hear the end of the question. Wasn't the gun used there to open fire on the kidnappers? Mr. Arzola used the gun to open fire on the police who he claimed – Well, but the kidnappers had to do – it was all related to the drug conspiracy. It was not a separate – at least that's the way we viewed it from the facts. But if you have drug proceeds in your house and you are firing the gun at people who are entering the house, the jury can certainly draw the inference. It doesn't have to be the only inference that's available, but the jury can certainly infer that someone who's shooting at police officers who are entering the house is protecting – And that is the other thing. You have to assume here, we have to assume he was shooting at police officers. He was not shooting at an intruder. Right. Right? That's right. But there's evidence he looked out the window. There's evidence, Your Honor, that one of the police officers saw his face. There's testimony from another officer that he yelled, window, window, window, before the gun was fired. Another police officer said, I saw someone standing in the window. This all takes place before the officers enter the house. As Judge Berry pointed out, all of these people – there are nine of them – are wearing riot gear. And Brinker testified he's wearing a ballistic Kevlar helmet, a three-foot by three-foot heavy raid vest with police across the front and DEA in big yellow letters across the back. And that was just Brinker. Yes. So it's hard to say that he didn't know. It's impossible as a permissible inference to say he didn't know the police were coming after him. And that's what makes this, Your Honor, a very different case. It must be baseball season again. Sorry. Just kidding. We Mexicans try our best. That's what makes this case a different case, of course, that if they merely come in the house, find some money, find the gun, there's no use of the gun. But, you see, before the jury came in, he could argue, and he did argue, that they had the gates and the heavy metal because the neighborhood was dangerous and you had to worry about intruders, burglars, robbers, whatever the correct legal word is. Once there's a verdict, that argument doesn't have any force, does it? No, absolutely not. In fact, there wasn't even any testimony at trial that the jury could consider that Mr. Arzola used this gun to protect his family because he didn't testify and he didn't put on any witnesses who testified that he believed that the house was being invaded by someone other than the police. And so if you accept the inference, which I think you have to on this record, that Mr. Arzola fired the gun at police officers who were entering his house, that that is certainly use during and in relation to a drug trafficking conspiracy because he doesn't want to be arrested. And it's possession in furtherance because by avoiding arrest by police officers, he is most certainly furthering the drug trafficking activity in this case. Although it is different. Usually we have this type of situation as an enhancement and the level of the inferences easily satisfy a preponderance test. But when you have it beyond the reasonable doubt standard for a crime, you wonder what level of inference is permissible in this situation. We have time here that shows seven minutes left, but I think we're getting into your argument for resale. So maybe you should wrap up. Okay. I'd just like to respond to that. I think that the inference drawing is the same, regardless of what the burden of proof on the fact finder is. The fact finder has different standards for finding facts and not finding facts, but this court on review has to draw the evidence in the light most favorable to the government, regardless of what the standard of proof is below. Thank you. And then what time will we put back on, I guess, seven minutes? Good afternoon, judges. My name is Michael Korobaniks, and I represent Missy Ellersola. I think that my client, Missy Ellersola. I thought we were going to have rebuttal. Oh, I thought. Do it all one. Did you reserve rebuttal time or not? Okay, you went over your ticket. Okay, all right. I think we understood your argument. If we had questions, we would have called you up for more. Are you reserving rebuttal time or not? I reserved one minute, Judge. Okay. I don't know if I'll need that. Missy Ellersola, I believe, stands in a different set of circumstances. Yeah, you've got drugs next to the gun. Well, not really, Judge. We don't know where the drugs are, and that's an interesting point here, and I think sort of what Sparrow talks about in its balance. We have 20.69 grams of cocaine in the bedroom, in a closet, in a jacket pocket. You've got a gun under the nightstand with cash, $5,000 in cash. With all due respect, Judge, we have a gun under a night table. That's established. It's not accessible because the officer testifies that he has a difficult time getting it under the night table. It's loaded, too. It's loaded. With no surrounding ammunition or other ammunition, which has been brought out in other cases. Yeah, but he's got seven bullets in it. And none fired. Oh, well, good. Well, he has a constitutional right to that gun. The gun is not stolen. The gun has no defacement to it. The gun is next to cash in a bank envelope, which the government's own expert witness says he's never seen before. He also is testimony that that money, by the own government witnesses, could be related to a sale of a car by his girlfriend days before. There is cocaine found in a jacket that is never established by the government in putting their proofs forward that the jean jacket ever belonged to Missy L. Arzola. But it's in the apartment. It's in the bedroom, right? Where he lives with his girlfriend. And we're talking about a case, to put this in perspective, where the trial court found these gentlemen responsible for over 150 kilograms. You're talking about a street-level amount of cocaine, in this case, that was found in his apartment. Now, he lives there with his girlfriend, who was also present. So we don't even know whose coat that was or who possessed that cocaine. Okay, what do you do with his discussion on 525 when he tells the girlfriend to hide the toy? First of all, I agree that the inference could be made based on the expert's opinion that he was speaking about a gun. But the government has a duty. How do you know it's not the same gun? That's exactly right. But isn't that the inference now, given the verdict? I don't believe so. Because I don't think you can use speculative facts when you have a gun that is being spoken about some 30 days prior, and we speak about that in the surrounding circumstances that Sparrow speaks about of when the gun is found. First of all, we don't even know if that gun, it was never established that on May 25th, the home she was at was 210 Danforth. We don't know. There were various locations in this case that they claimed the drugs were. Well, the testimony is that he spoke to his girlfriend, Melissa Jordan, who was at his apartment. And his apartment was 210 Danforth. That's the evidence. The testimony, as I recall it, was the conversation said that, where are you? I'm at the house. Yeah. That's it. There are storage houses. There are crack houses. There's a White House. I mean, there's a lot of. Well, one of the houses was a White House. They found over six kilos in it. That's a place where they're given capacity. That's a place where drug dealings occur. There is never one iota or scintilla of evidence that any drugs or any occurrences happened at 210 Danforth. So. Well, you did have 20.9 grams of cocaine found in the bedroom with almost $6,000 worth of cash and a loaded gun. That's correct. But there is no nexus or inference or nexus that could be drawn by any inference that they were connected in any way. What did Misael do other than drug deals? He worked at a paint store. And that was brought out. Pardon me? He worked at a paint store. And that was brought out clearly through evidence and was never even challenged by the government. And he also, his girlfriend owned a car in which there was evidence that there was a sale that went on to that car. And I think when you put that in with the very fact that the government's own expert said he never saw drug proceeds. You see, that's. Kept in a bank envelope. That's your argument to the jury. That's the argument to the jury why they should not have convicted. But we are here under a standard of review with a jury verdict. I understand that. But going, my argument is that before it goes to the jury, the government cannot rely on speculative evidence to tie these things together. That's when Sparrow speaks about the mere presence of these three things in and of themselves does not give inference that the drug was used in furtherance or in relation to a drug conspiracy. And that's why in Sparrow they lay out those eight factors we must put together. So. You don't need all eight. You're not suggesting. It's a balancing. It's what you want to give to each one. And the weight the court wants to give to each one. You could have one where the activity is they're selling out and have nothing else. And I think that's stronger than if you have a little bit of everything. But on review, don't we have to, in order to find your way, we would have to say that no reasonable juror could have found, based on the evidence, that there was possession in furtherance. Absolutely. And how do we do that? Because if you're, first of all, I really think that the court has to look at that conversation with the toy is totally irrelevant. It's totally irrelevant. That's constructive possession. That conversation would be constructive possession, would it not? Of what? Of the gun. On May 25th. On May 25th. But not on June 30th. And a permissible inference it was the same gun on June 30th. I don't. It was hidden. I think. At his instructions. But we don't know where. We don't know where. Under the nightstand. There's no evidence of that. That's where it was found. On June 30th. On June 30th. On May 25th, it's never established where anything is. It's never established for the jury that he was even living there on May 25th, 2008. And that's, the government has the burden of establishing. Why is he arguing to the jury? Because his instructions, he called her at the house. Correct. Okay. Inference. His house. And said hide it. But not on that date. And that's where I think the government has a duty to provide some, that's speculation. Now we're speculating. We're not giving any circumstances that lead to that inference. And that's, I think, the only thing that's non-speculative is on June 30th that they found a gun. They found drugs. They never even established who the drugs belonged to or ruled people out. The government has the burden of proving their case. We are not there to cross-examine to prove their case. But they proved their case, you say. I don't think they proved their case. And that's why you're before this court. That's correct. On this issue. And I think maybe the court has doubts of whether they proved their case or else I wouldn't be before this court. All right. Thank you. Thank you very much. Your Honor, among the evidence that the jury could consider in deciding whether or not, and this is, Your Honor, a pure possession inference. We don't have evidence that Mizal used the gun that we did with Arsenio. Among the evidence that the jury could consider is that this defendant sold essentially the same amount of crack cocaine to an undercover or confidential informant just two months earlier. Did you prove whose jacket it was? We did not prove that it was his jacket in the sense that we got him to stand up and put it on. He's the only man in the house. Was it a man's jacket necessarily? Do we know that? I don't know that. It could have been his girlfriend's jacket. It could have been his girlfriend's jacket. But who's the person who's dealing drugs, Your Honor? Who's the person who's going out with 20? Well, this is $500 worth. This is not. But that's exactly the amount of cocaine that he's distributing, Your Honor. It would be one thing if he was only involved in rape transactions. But we know for a fact, you know, that the evidence is undisputed. He conceded at trial that Mizell Arzola was the one who on two occasions showed up and handed 20 grams of crack cocaine to a woman. But just because it's the same weight that he deals in doesn't mean it's his in the jacket, does it? I mean, maybe it's his in the jacket, and maybe he sold it to her. Your Honor, there's lots of possibilities. The question is could the jury draw a reasonable inference that a man who just a couple months ago was selling crack cocaine, was selling powder cocaine in 20-gram installments and happens to have 20 grams of cocaine in his apartment. But that you could prove this beyond a reasonable doubt. Your Honor. That you could prove beyond a reasonable doubt that he possessed this gun in furtherance of the drug conspiracy. Didn't you have to show that these drugs were his? We had to. The case law where it applies, the drugs belong to the drug dealers. Here we don't even know whose jacket it was. You certainly, the jury was properly instructed on the burden of reasonable doubt, and they found that burden. And going back to our discussion with respect to Mr. Carlucci's case, you just have to decide whether that inference was reasonable. You've got nobody in that apartment except for Misael Arzola, his wife about which there is no evidence that she has any involvement in drug trafficking. She gets a phone call to hide a gun, and I believe there are some children. Is it possible that the children had that gun and had that powder? Yes, it's possible, Your Honor. But the fact that the jury found that that cocaine belonged to Misael Arzola is not unreasonable. Is there any evidence in the record that, I mean, apparently there's some question about his home. Now, in June, obviously, it's Danforth Avenue. Any record that he lived elsewhere earlier than that? I don't believe there's any evidence one way or the other that he lived somewhere else. Because we talked about a house, and, you know, what house could that be? But if he's making a phone call to his wife to hide the gun and she's at the house, and this goes back to Mr. Korbenek's argument that she could have been someplace else, why would he care about hiding the gun unless the gun was in a place that it could be linked to him? I mean, not only is it evidence of constructive possession of the gun at that time, but it's also evidence of consciousness of guilt. Mr. Arzola, unlike Arsenio Arzola, is not a previously convicted felon. So he does have a right to possess the gun in his own house, and yet he's calling his wife or girlfriend up and telling her, hide the gun. And when does he tell her to hide the gun? When he sees that there are narcotics officers in the area. So he doesn't want the... But how do we draw an inference that a month later the gun found in the house is the same gun he was talking about? You don't need to draw that inference. You can draw the inference that Mr. Arzola has a consciousness of guilt about possessing guns in his home. Why would he feel guilty about possessing guns in his home if he can lawfully possess them? Well, he can't possess them in his home if he's a drug dealer. And that's why he wants the gun hidden, whether it's this gun or any other gun. But on your theory, it sounds like any drug dealer, once he's a drug dealer and he has a gun, then he can be found guilty of the crime of possession of a gun in furtherance of the drug conspiracy. And that's a separate crime. It's not just an enhancement. It's a crime in and of itself. That's not my position, Your Honor. It is possible for someone, for a drug dealer to possess a gun if it's not in furtherance. What would be the factual scenario here if the drugs weren't his? Well, first of all, you have to look at the kind of drug trafficking that he was doing. Someone who's personally carrying drugs almost on a daily basis and handing them over to somebody else is going to be more in need and have a stronger motive to carry a gun for protection than someone like his brother Benjamin. But that's not what the Sparrow factors are very linked to. What is in that location? Your Honor, I beg to differ. One of the Sparrow factors are the kind of crime that's involved. And the kind of crime here is not just drug trafficking, Your Honor. This is a man who's carrying the drugs himself frequently. That's the kind of person, when you're handing drugs over to a confidential informant, someone who he apparently doesn't know very well, that's the kind of person who's going to have a strong motive to carry a gun for protection. He's worried that the drugs might get stolen, the money might get stolen. Now, you're right that if a drug dealer had a gun in his house and other than the fact that he was a drug dealer, there was no connection to the gun. He didn't ever have any drugs in his house. He didn't have any proceeds of drug trafficking in his house. That might be a case where if that's all we proved, that would be insufficient. Shouldn't the government have to prove that they were his drugs and were drug proceeds? Your Honor, I think it's a reasonable inference on this record, given the kind of activity that Mizola Arzola was engaged in, that those were his drugs. It's possible that they weren't. But the jury could draw the inference that they were his. This isn't a man who delivered drugs once in a blue moon or only dealt with different amounts of drugs. This is a man who distributed that precise quantity of drugs recently. The jury can certainly infer that those are his drugs. I'd just like to go through some of the other sparrow factors, if I could. The gun also, the nature of the gun, is significant in this case. This isn't a shotgun or a long rifle, something that isn't typically associated with drug trafficking. The cases say that this particular kind of gun, a semi-automatic handgun, is a gun of choice for drug dealers. And that's significant as well. And I think that's the other significant factor. So unless the Court has any questions, I've got nothing else. Thank you. Thank you very much. Mr. Robach, did you want to reserve your one minute? One thing that the government brought out that really shows the danger a defendant faces when the government doesn't have to prove the surrounding circumstances is, and the word consciousness of guilt came out about hiding the gun. Well, how could you infer by that phone call that there were even drugs or any sort of profit present when that phone call was made? Because it seems if you were a drug dealer and someone was going to go to a home where drugs are kept, the reasonable inference of a call that would show consciousness of guilt is, get rid of the drugs. So whether or not Mr. Arzola was sophisticated enough to know what exact gun laws were or he was just a guy who had a legal gun but didn't really need the hassle if the police came, there are many alternatives to that, and I don't think any reasonable inference can be drawn. Thank you. Thank you. Thank you, counsel. Cases, we'll take it under advisement.